UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KELLIE MARIE MASTRORILLI,

      Plaintiff,

v.                              CASE No. 8:15-CV-1466-T-27TGW

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

      Defendant.

_____

REPORT AND RECOMMENDATION

      This cause came on for consideration upon the Defendant's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Doc. 10); the plaintiff's opposition memorandum (Doc. 13); the defendant's reply (Doc. 15); and the plaintiff's response to the defendant's reply (Doc. 17).[1]   The Commissioner contends that the court lacks subject matter jurisdiction over this lawsuit, which seeks review of the Commissioner's decision that the plaintiff's claim is barred by the doctrine of res judicata. Specifically, she argues that this finding is not a "final decision," as required

_____

[1]This matter comes before the undersigned pursuant to the Standing Order of this court dated August 28, 1987. See also Local Rule 6.01(c)(21).

under 42 U.S.C. 405(g) for this court's jurisdiction, and the plaintiff has not stated a colorable claim of a constitutional violation (Doc. 10).

While I agree that the court does not have subject matter jurisdiction pursuant to §405(g), the court does have jurisdiction over the plaintiff's colorable constitutional claim that the Commissioner arbitrarily applied res judicata to her most recent disability claim. Moreover, because the Commissioner's decision does not adequately explain the application of the doctrine in this case, I recommend that the decision be reversed and the matter remanded for further consideration of the issue of res judicata.

I.

On November 20, 2008, the plaintiff filed, pro se, an application for a period of disability and disability insurance benefits under Title II of the Social Security Act, alleging that she became disabled on January 1, 2000 (see Doc. 10-1, ¶(4)(a)). The time period under consideration extended to June 30, 2005, the last day the plaintiff was insured for disability insurance benefits (Doc. 10-2, p. 7).

On March 27, 2009, the Social Security Administration issued an unfavorable decision on the application (id., p. 1). The letter advised the

plaintiff that she had 60 days to request reconsideration of the determination, but she did not do so (id., pp. 1-2, 7). Consequently, the determination became administratively "final" (id., p. 7).

On January 24, 2012, the plaintiff filed another application for disability insurance benefits, again alleging that she became disabled on January 1, 2000 (see id.). The application was denied initially, and on reconsideration. The plaintiff then requested a hearing before an administrative law judge. On May 9, 2014, the law judge issued an Order of Dismissal, stating that, "[b]ecause the doctrine of res judicata applies, the request for hearing dated November 19, 2012 is dismissed" (Doc. 10-2, p. 8). See 20 C.F.R. 404.957(c)(1) (res judicata applies when there is a previous final determination involving the claimant's rights on the same facts and on the same issues).

In this regard, the law judge noted that the denial of the plaintiff's 2008 application for disability insurance benefits was not appealed and, therefore, it was "final and binding" (Doc. 10-2, p. 7). The law judge evaluated whether the time for requesting review of that decision should be extended under Social Security Ruling 91-5p, which permits additional time

to seek review when the claimant has a mental impairment that affected her understanding of her right to seek review (id.). However, the law judge found that such an extension was inapplicable because "at the time of the previous determination, the claimant did not have or allege having a mental impairment" (id.).

The law judge also considered whether the plaintiff's previous claim should be reopened, but found that the plaintiff had not submitted "new and material evidence" that would provide good cause to reopen the claim (id.). In this regard, the law judge acknowledged that the plaintiff had submitted additional evidence, but found that it was not "new and material" because it was dated between September 2008 and March 2014, years after the expiration of the alleged disability period (id., pp. 7-8). Consequently, the law judge stated that there is no reason why the March 27, 2009, determination denying the plaintiff's initial disability benefits application should not remain final and binding.

The law judge next examined whether the previous determination and the current claim involved the same facts and same issues (id.). He noted that the alleged period of disability is the same for both claims

(January 1, 2000, to June 30, 2005). Further, after comparing the evidence considered in reaching the previous determination with that related to the current claim, he found that "no new and material evidence has been submitted" (id., p. 7). The law judge added that there "ha[d] been no change in statute, regulation, ruling or legal precedent concerning the facts and issues ruled upon in connection with the previously adjudicated period" (id., p. 8). Consequently, the law judge ruled that the doctrine of res judicata applied to the plaintiff's current claim (id.).

The law judge advised the plaintiff that she could request the Appeals Council to review his decision and include new evidence with that appeal, which she did (see Doc. 10-2, pp. 4-5, 9-10). After considering the reasons the plaintiff disagreed with the law judge's determination, and the additional evidence submitted by the plaintiff, the Appeals Council denied her request for review because it found that the information "does not provide a basis for changing the Administrative Law Judge's dismissal" (id., p. 9).

The plaintiff subsequently filed this lawsuit, seeking review of the dismissal of her January 24, 2012, claim for disability insurance benefits and request for hearing (Doc. 1). The plaintiff states that she has "fully and

completely exhausted her administrative remedies" and requests "review [of] the final decision of the Defendant" pursuant to 42 U.S.C. 405(g) (id., ¶¶3, 7).

The defendant moves to dismiss the plaintiff's complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), F.R.Civ.P., or, in the alternative, requests summary judgment in her favor (Doc. 10). The Commissioner argues that subject matter jurisdiction is absent because the dismissal of the plaintiff's request for a hearing on res judicata grounds is not a "final decision" as required for jurisdiction under 42 U.S.C. 405(g), and the plaintiff has not stated a colorable claim of a constitutional violation. The plaintiff contends that the Commissioner's determination was a final decision under §405(g), and that the defendant's actions violated her constitutional right to due process (Docs. 13, 17).

II.

A motion to dismiss under Rule 12(b)(1), F.R.Civ.P., for lack of subject matter jurisdiction can be resolved either on the face of the complaint, or on the basis of factual submissions. Carmichael v. Kellogg, Brown & Root Services, Inc., 572 F.3d 1271, 1279 (11th Cir. 2009).

Facial attacks to subject matter jurisdiction require the court merely to look and see if the plaintiff's complaint has sufficiently alleged a

basis of subject matter jurisdiction, and the allegations in the complaint are taken as true for the purposes of the motion. Id.

Factual attacks challenge subject matter jurisdiction in fact, irrespective of the pleadings. Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990). In that circumstance, the district court may consider extrinsic evidence and no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the court from evaluating for itself the merits of the jurisdictional issue. Id.; Houston v. Marod Supermarkets, Inc., 733 F.3d 1323, 1335-1336 (11th Cir. 2013). In this case, the defendant has asserted a factual challenge to jurisdiction. Accordingly, the exhibits attached to the parties' memoranda have been considered.

III.

A.     The defendant argues first that "[a] dismissal on res judicata grounds is not a final decision of the [Commissioner] made after a hearing" and, therefore, this Court lacks subject matter jurisdiction over the plaintiff's claim (Doc. 10, p. 7). Judicial review of Social Security decisions is governed by 42 U.S.C. 405(g), (h).

Section 405(g) pertinently provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days ...." Thus, under §405(g), judicial review is limited "to a particular type of agency action, a 'final decision of the [Commissioner] made after a hearing.'" Califano v. Sanders, 430 U.S. 99, 108 (1977) (emphasis added).

Moreover, §405(g) is the exclusive source of federal court jurisdiction for Social Security cases. Jackson v. Astrue, 506 F.3d 1349, 1353 (11th Cir. 2007). This is due to 42 U.S.C. 405(h), which states, inter alia, that "[n]o findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or government agency except as herein provided." Consequently, jurisdiction to review Social Security decisions can be based only on §405(g).

The regulations authorize the Commissioner to dismiss a request for hearing and decline to issue a final decision if the doctrine of res judicata applies. 20 C.F.R. 404.957(c)(1); Cash v. Barnhart, 327 F.3d 1252, 1255 (11th Cir. 2003); Holland v. Heckler, 764 F.2d 1560, 1562 (11th Cir. 1985).

-8-

Therefore, the issue here is whether the dismissal of the plaintiff's hearing request on the basis of res judicata is an administrative decision for which judicial review is authorized under §405(g). The answer is no.

Thus, well-established Eleventh Circuit authority holds that, "[i]f the [Commissioner] finds res judicata applicable, that finding is generally unreviewable by the federal courts because it is not a 'final decision of the [Commissioner] made after a hearing' as required by the Social Security Act for federal jurisdiction." Holland v. Heckler, supra, 764 F.2d at 1562 (citing Califano v. Sanders, 430 U.S. 99, 108); see also Cash v. Barnhart, supra, 327 F.3d at 1256 ("no jurisdiction exists under §405(g) to support judicial review of the ALJ's and the Appeal Council's decisions" to dismiss request for a hearing on the basis of res judicata); Graham v. Bowen, 786 F.2d 1113, 1114 (11th Cir. 1986) ("[i]t is clear from the record that the ALJ applied administrative res judicata to bar ... the claims arising on or before May 14, 1982" and the court is "without jurisdiction to review that finding"); Hensley v. Califano, 601 F.2d 216 (5th Cir. 1979) ("refusals to reopen and determinations that a claim is res judicata are not reviewable").

Accordingly, the Commissioner's decision to dismiss the plaintiff's request for a hearing and to decline to issue a final decision because res judicata applies is, in general, not reviewable. 42 U.S.C. 405(g); Holland v. Heckler, supra, 764 F.2d at 1562.

The plaintiff argues that the lack of a hearing does not preclude the district court from having subject matter jurisdiction under §405(g) (Doc. 13, pp. 2-3).  She relies upon Boley v. Colvin, 761 F.3d 803, 805 (7th Cir. 2014), and Pizzaro v. Commissioner of Social Security, No. 6:12-CV-801-ORL; 2013 WL 847331 (M.D. Fla. March 7, 2013), both of which are factually inapposite, and contrary to binding Eleventh Circuit authority. Thus, in Boley and Pizzaro, the plaintiffs claimed that they, or their counsel, did not receive notice of the Commissioner's adverse decision within the time to appeal.  There is no evidence of deficient notice in this case.

The plaintiff emphasizes the Seventh Circuit's holding that a "final decision after a hearing" does not necessarily require an oral hearing, and "means whatever process the Social Security Administration deems adequate to produce a final decision" (Doc. 13, p. 7, quoting Boley v. Colvin, 761 F.3d at 805).  However, this statement is contrary to the weight of

authority on this issue, including the longstanding holding of the Eleventh Circuit that a finding of res judicata "is not a 'final decision of the [Commissioner] made after a hearing' as required by the Social Security Act for federal jurisdiction." Holland v. Heckler, supra, 764 F.2d at 1562. In fact, in Boley, the court acknowledged that Ortego v. Weinberger, 516 F.2d 1205, 1207-1208 (5th Cir. 1975) — a binding decision of the former Fifth Circuit — is to the contrary. 761 F.3d at 808. Therefore, there is no merit to the plaintiff's argument that the Commissioner's decision to dismiss her request for a hearing on res judicata grounds is a final decision that is reviewable by this court under §405(g).

B.     An exception to this general rule is that "judicial review may be had where the claimant raises a colorable constitutional issue" that warrants reopening of the claim. Sherrod v. Chater, supra, 74 F.3d at 245; Califano v. Sanders, supra, 430 U.S. at 109; Holland v. Heckler, supra, 764 F.2d at 1562. The plaintiff argues that she has alleged a colorable constitutional due process claim based on her mental illness and the arbitrary application of res judicata (Doc. 13, pp. 4-6; Doc. 17, pp. 5-6).

1.    Mental Illness

A colorable constitutional claim is stated when "mental illness precluded [the plaintiff] from litigating [her] claim [for disability benefits] because it prevented [her] from proceeding from one administrative level to another in a timely fashion." Elchediak v. Heckler, 750 F.2d 892, 894 (11th Cir. 1985). Thus, the alleged due process deficiency in this circumstance is "the claimant's [in]ability to understand and act on that notice." Id.

In Elchediak, the plaintiff alleged he was disabled due to paranoid schizophrenia. Id. at 893. The application was denied and became final when the plaintiff did not seek review of that decision. Id. A subsequent application by the plaintiff for disability benefits was denied based on res judicata because he was found not disabled for the same time period in his initial application, which he did not appeal. Id. Elchediak filed a lawsuit in federal court, which the Commissioner moved to dismiss for lack of subject matter jurisdiction. Id. The Eleventh Circuit held (id. at 894-895):

> we find that the plaintiff here raises a colorable constitutional claim since he has shown: (1) he suffers from a medically-documented mental illness which serves as the basis for his disability claim; (2) on his first application he was without the assistance of counsel or other suitable

-12-

representation; and (3) that he cannot assert a new claim for benefits because he now lacks insured status.[2]

The Eleventh Circuit cautioned, however, "[i]n reaching this decision we do not intimate that every claimant who alleges that a mental problem or disorder prevented him from understanding and pursuing his administrative remedies will have raised a constitutional issue." Id. The Second Circuit elaborated:

> Since inquiry as to the mental impairment (short of mental incompetency) of the recipient of notice is an exception to normal due process requirements for effective notice, we will permit such claims to invoke federal court jurisdiction only upon a particularized allegation of mental impairment plausibly of sufficient severity to impair comprehension. A claim of constitutionally defective notice, even in the context of a claim for disability benefits based on mental illness, cannot invoke federal court jurisdiction merely upon a generalized allegation, long after the fact, that the claimant was too confused to understand available administrative remedies.

Stieberger v. Apfel, 134 F.3d 37, 40-41 (2d Cir. 1997).

---

[2]The Eleventh Circuit remanded the matter to the district court with instructions that it direct the Secretary to determine whether Elchediak's mental illness prevented him from understanding and pursuing his administrative remedies following the denial of his first application for benefits. Id. at 894.

The plaintiff argues that she satisfies the <u>Elchediak</u> factors. She asserts there is evidence which "indicates [that she] suffers from a medically-documented mental illness which serves as a basis for her disability claim," she did not have assistance of counsel for her initial disability application, and she cannot assert a new claim for benefits because her insured status expired (Doc. 13, p. 4).

The plaintiff has clearly satisfied the second and third prongs of <u>Elchediak</u>. However, as the Commissioner argues, the plaintiff has not satisfied the first prong of <u>Elchediak</u> because she has not presented evidence from which it may be plausibly inferred that she had a mental illness that prevented her from understanding and pursuing her administrative remedies following the denial of her initial disability benefits application (Doc. 15, pp. 4-5).

As indicated, <u>Elchediak</u> applies when a "mental illness prevented [the claimant] from understanding and pursuing h[er] administrative remedies following the denial of h[er] first application for benefits." 750 F.2d at 894. Therefore, the first prong of <u>Elchediak</u> requires evidence of "a medically documented illness that prevented [the plaintiff] from protecting h[er] rights

under the Social Security Act at the time the plaintiff's status as not disabled became final." Stewart v. Astrue, No. 5:08-cv-90-OC-10GRJ; 2008 WL 3982690 (M.D. Fla., Aug. 26, 2008); Prather v. Astrue, 8:11-CV-245-T-AEP at Doc. 21, p. 7 (M.D. Fla. Nov. 14, 2011) (unpub. dec.) (first prong of Elchediak was not satisfied because the plaintiff failed to provide evidence showing she could not understand and pursue her administrative remedies); Social Security Ruling 91-5p at *2 (S.S.A.) (claimant must present evidence that mental incapacity may have prevented her from understanding the review process).

In this case, the law judge found that, "at the time of the previous determination the [plaintiff] did not have, or allege having a mental impairment" (Doc. 10-2, p. 7). There is also no evidence that, during the time period to seek reconsideration of her disability application, she was receiving mental health treatment or diagnosed with a mental illness (see Doc. 15, p. 5). Moreover, in November 2008, the plaintiff filed her initial disability application pro se, thereby indicating that, in the months before the denial, the plaintiff was mentally able to prosecute her disability application in a proper manner even without an attorney.

The plaintiff argues that she satisfied the first prong of <u>Elchediak</u> because she alleges a mental disability in her current application (Doc. 13, p. 4). However, the disability claim concerns the time frame of January 1, 2000, to June 30, 2005. Consequently, that claim does not indicate the plaintiff's mental capability during the pertinent time period in the Spring of 2009, when she failed to timely seek reconsideration of her disability application. Therefore, in this circumstance, the plaintiff's allegation of a mental disability in her current disability application does not satisfy the first prong of <u>Elchediak</u>.

The plaintiff argues further "that her mental illness prevented her from fully understanding and/or pursuing her administrative remedies following the denial of her first application for benefits" (Doc. 13, p. 5). She states that this assertion

> is supported by evidence that during 2009 (when the unfavorable determination was issued in regard to her prior application), she was being actively treated for mental illness by a psychiatrist, Dr. Hernandez.... Even prior to that, it was observed by Judith Piesco that [the plaintiff's] trying to complete a document would cause her to panic and lose her train of thought.

(id.).  This evidence does not present a colorable claim of a constitutional violation based on mental illness.

The plaintiff was treated by psychiatrist Nelson A. Hernandez from October 2009 to March 2010 (Doc. 13, p. 4, n.3; Doc. 13-1).  Thus, the plaintiff initiated this treatment several months after she received notice of the adverse disability determination (and at a time when the plaintiff was experiencing greater anxiety due to the return of the plaintiff's autistic and schizophrenic daughter to her home (see Doc. 13-1, pp. 3, 4, 8)).  Consequently, Dr. Hernandez's treatment records, on their face, are not probative of the plaintiff's mental functioning during the pertinent time period of March 2009 through May 2009.  See Collier v. Commissioner of Social Security, 504 Fed. Appx. 835, 838 (11th Cir. 2013) (noting that Elchediak received medical treatment for his schizophrenia shortly before the Commissioner denied his application for benefits); Prather v. Astrue, supra, 8:11-cv-245-T-AEP, Doc. 21, pp. 5-6 (physician's report of the plaintiff's mental capacity not given much, if any, weight, because it does not cover the time period when the plaintiff is alleging her mental illness kept her from complying with the administrative rules).

Furthermore, assuming that Dr. Hernandez's treatment of the plaintiff is probative of the presence of a mental illness during the relevant time period, it may not plausibly be inferred from that evidence that the plaintiff's mental impairments were of such severity to prevent her from understanding and proceeding with the administrative appeals process. See Sherrod v. Chater, 74 F.3d at 246 (the overriding concern in Elchediak was whether mental illness prevented him from proceeding one administrative level to another in a timely fashion); Prather v. Astrue, supra, 8:11-CV-245-T-AEP, Doc. 21, p. 7 (the issue is not whether the plaintiff had a mental impairment, but whether it prevented her from understanding and pursuing her administrative remedies following the denial of her application for benefits).

Thus, although Dr. Hernandez diagnosed the plaintiff with several mental impairments (depression, anxiety, attention deficit hyperactivity disorder, and post traumatic stress disorder), the plaintiff's mental status examinations do not show debilitating mental dysfunction (see Doc. 13-1, pp. 1-4, 11). To the contrary, the plaintiff's mental status examinations regularly showed that, despite a depressed mood and moderate

anxiety, the plaintiff was oriented x4, she had intact cognition, exhibited organized and relevant thought content, normal memory, fair to good insight and judgment, and normal perception (see id., pp. 1-4). Furthermore, Dr. Hernandez assessed the plaintiff with a Global Assessment of Functioning score of "65-70" (id., p. 12). The GAF scale "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders, (DSM-IV-TR) (4th ed., Text Revision), p. 34. A GAF score of 65-70 indicates only "[s]ome mild symptoms ... OR some difficulty in social, occupational, or school functioning ... but generally functioning pretty well..." Id.[3]

Therefore, Dr. Hernandez's treatment records do not show substantial mental functional limitations, and they certainly do not indicate mental illness of such severity as to prevent the plaintiff from understanding the disability determination, which is "explain[ed] in simple and clear language," or show that mental illness precluded her from submitting a written request for reconsideration of that decision in a timely manner. 20

---

[3]A score of 70 is on the cusp of only "transient and expectable reactions to psychosocial stressors...no more than slight impairment in social, occupational or school functioning." Id.

C.F.R. 404.904, 404.909. Accordingly, the plaintiff's contention is meritless that Dr. Hernandez's psychiatric treatment establishes a colorable claim that she was mentally incapable of understanding and pursuing administrative remedies.

The plaintiff also mentions that Judith Piesco observed that the plaintiff "trying to complete a document would cause her to panic and lose her train of thought" (Doc. 13, p. 5). The plaintiff's submissions do not contain evidence from Judith Piesco (see Doc. 13-2). Regardless, as the Commissioner notes (Doc. 15, p. 6), a lay person cannot establish the existence of a mental impairment, which is diagnosed by an acceptable source, and must be demonstrable by medically acceptable clinical and laboratory diagnostic techniques. See 20 C.F.R. 404.1513, 404.1529.

The plaintiff also submitted with her opposition memorandum affidavits from former co-workers, Frank Cole and Michele Carrao, and her sister, Michele Mattia (Doc. 13-2); and evidence of mental health treatment between 2010 and 2014 (Docs. 13-3; 13-4). This evidence also fails to establish a colorable constitutional claim based on mental illness.

The plaintiff mentions that she was treated by psychiatrist Jose Gonzalez-Canal from June 2010 to January 2014 (id.). Dr. Gonzalez-Canal's treatment commenced more than one year after the denial of the plaintiff's disability claim and, therefore, on its face, is too far removed from the pertinent time period to show that the plaintiff had a mental illness that precluded her from understanding and pursuing her administrative remedies.[4]

In sum, the plaintiff has not presented evidence from which it may plausibly be inferred that she had a mental illness that "prevented [her] from understanding and pursuing h[er] administrative remedies following the denial of h[er] first application for benefits." See Elchediak, supra, 750 F.2d at 894. Accordingly, the plaintiff's alleged mental impairments provide no basis for disregarding the principle of administrative res judicata in this case.

---

[4]Furthermore, Dr. Gonzalez-Canal's mental status examinations of the plaintiff do not reflect debilitating mental impairments. Dr. Gonzalez-Canal assessed the plaintiff with depression, anxiety, and bulimia, and later added diagnoses of attention deficit disorder and PTSD (see Docs. 13-3; 13-4). Dr. Gonzalez-Canal's mental status examinations show that, although the plaintiff was anxious and had deficient concentration, her sensorium was intact, she interacted appropriately, her thought content and thought processes were normal, and her memory was good (see id.).

2.    Denial of Hearing

The plaintiff also contends that her constitutional right to due process was violated because the defendant did not give her an opportunity to present new and material evidence at a hearing (Doc. 1; Doc. 13, p. 5; Doc. 17, pp. 5-6). This argument is baseless to the extent it asserts that the plaintiff was denied an opportunity to submit new and material evidence. In fact, the plaintiff was permitted to submit additional evidence, which she did.

Further, the plaintiff would not be entitled to a hearing if the law judge properly found that the claim was barred under the doctrine of res judicata. 20 C.F.R. 404.957(c)(1). The defendant ruled that the plaintiff's current application presented the same issues and facts as the prior application. It is not a due process violation to deny the plaintiff a hearing on the current application if res judicata was properly applied. 20 C.F.R. 404.957(c)(1) (An administrative law judge may "dismiss a hearing request ... because ... [t]he doctrine of res judicata applies...."").

However, the plaintiff alleges, persuasively, that she was entitled to a hearing "due to the existence of new and material evidence of a mental impairment which was not previously considered" (Doc. 1, ¶11). Thus, the

plaintiff argues that at a "hearing ... she could easily have demonstrated the new claim is not actually based on the same facts and same issues" (Doc. 13, p. 6). Similarly, in her response to the defendant's reply, she asserted that at a hearing she could have demonstrated "that the new claim is not actually based on the same facts and same issues" (Doc. 17, p. 6). The presentation of the new evidence goes to the question whether res judicata applies. Thus, the assertion that the new claim is not based on the same facts and the same issues raises the contention that res judicata was not properly applied.

In Tobak v. Apfel, 195 F.3d 183, 187 (3rd Cir. 1999), the Third Circuit referred to "the undisputed proposition that federal courts ... have jurisdiction to determine whether res judicata has been properly applied to bar the pending claim." In McGowen v. Harris, 666 F.2d 60, 64-65 (4th Cir. 1981), which was cited with approval in Holland v. Heckler, supra,764 F.2d at 1563, the court stated that when the Commissioner challenges jurisdiction on the basis of 42 U.S.C. 405(g) and res judicata, "the district court has jurisdiction to determine its own jurisdiction by examining the res judicata predicate, and that ordinarily this will require consideration of the

administrative record."   The court explained further (id. at p. 65) (citations

omitted):

> When, following any final administrative decision denying a claim on the merits a claimant files a subsequent claim, the Secretary may properly apply administrative res judicata in bar only if it is the "same" claim earlier denied.   Whether it is the same claim must necessarily be determined according to general principles of res judicata respecting the scope of a claim for purposes of merger and bar as adapted to the social security claim context.
>
> If administrative res judicata has been applied in bar of a subsequent claim which, properly assessed, is not the same for res judicata purposes, jurisdiction to engage in judicial review exists.   In that situation the subsequent claim is necessarily, in legal contemplation, a different one whose merits have never been addressed administratively. In consequence the Secretary's decision denying the claim was one as to which the claimant was entitled to a hearing and hence, to judicial review of the denial.

The plaintiff has sufficiently raised a challenge to the application

of res judicata.   Thus she asserts that her new claim is not based on the same

facts and same issues that were considered in the first claim.   As indicated,

this court has jurisdiction to determine whether res judicata was properly

applied to bar the second claim.

The problem, however, is that neither the law judge nor the Appeals Council adequately explained the basis for the application of res judicata to permit meaningful judicial review. Both the law judge's Order of Dismissal and the Appeals Council's denial of review were conclusory at best.

The law judge's rationale for applying res judicata consisted merely of the following statements (Doc. 10-2, pp. 7-8):

> The question therefore becomes whether the same facts and same issues are involved. The undersigned has compared the evidence considered in reaching the previous determination with that relating to the claimant's current claim. Based on this comparison, the undersigned finds that no new and material evidence has been submitted. Namely, there is no evidence in the file whatsoever during the timeframe beginning with the January 1, 2000 alleged onset date and ending with the June 30, 2005 date last insured, as all of the evidence is dated between September 2008 and March 2014.
>
> Further, there has been no change in statute, regulation, ruling or legal precedent concerning the facts and issues ruled upon in connection with the previously adjudicated period. Additionally, as already stated, the claimant's insured status expired prior to the previous determination. Accordingly, the claimant's rights on the same facts and on the same issues are involved and the doctrine of *res judicata* applies.

There is no discussion of the evidence, including the alleged impairments, upon which the prior claim was based. Similarly, there is no such discussion in the letter denying the plaintiff's claim (Doc. 10-2, p.1), in the Appeals Council's denial of review (id., p. 9), or in the affidavit supporting the Commissioner's motion (Doc. 10-1, p. 3). Under these circumstances, it is not possible to determine whether the second claim involves the same facts and the same issues as the first claim.

Moreover, the law judge stated in the Order of Dismissal that "at the time of the previous determination, the claimant did not have or allege having a mental impairment" (Doc. 10-2, p.7). However, in connection with her subsequent claim, the plaintiff is clearly asserting a mental impairment, and, as shown, she has presented evidence in support of that allegation. That circumstance appears to refute a conclusion that the second claim involves the same facts and the same issues as the first claim.

The application of res judicata cannot be sustained on the ground that "there is no evidence in the file whatsoever during the time frame beginning with January 1, 2000 alleged onset date and ending with the June 30, 2005 date last insured, as all of the evidence is dated between September

2008 and March 2014" (id., pp. 7-8). That statement conflates the issue of res judicata with the merits of the claim. The plaintiff's evidence purports to show her mental condition by the end of her insured status. Thus, it has a bearing on whether the second claim involves different facts or issues than the first claim. Whether the evidence is credible would go to the merits if the res judicata hurdle is crossed.

In sum, this court has jurisdiction to determine whether the doctrine of res judicata was properly applied. Meaningful judicial review of that issue is not possible because the law judge's decision is not sufficiently explained and the record is inadequate. Accordingly, the decision should be reversed and the matter remanded for further consideration of the application of res judicata, which is the only issue over which this court has jurisdiction. Of course, if it is determined on remand that res judicata does not apply, then the Commissioner should proceed to consider the merits of the claim.

IV.

For the foregoing reasons, I recommend that the Defendant's Motion to Dismiss Plaintiff's Complaint, or in the Alternative, Motion for

Summary Judgment (Doc. 10) be **DENIED** and the matter be **REMANDED**

to the Commissioner for consideration of the issue of <u>res judicata</u>.

Respectfully submitted,

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE

DATED: APRIL _7_, 2016

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to-factual finding or legal conclusion the district judge adopts from the Report and Recommendation. 11th Cir. R. 3-1.